WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tommy Gene Jones,<br><br>    Petitioner,<br><br>v.<br><br>Christopher Moody, et al.,<br><br>    Respondents. | No. CV-24-00599-TUC-AMM (LCK)<br><br>**REPORT AND RECOMMENDATION** |

      Petitioner, Tommy Jones, incarcerated at the Arizona State Prison in Eloy, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before this Court are the Petition (Doc. 1) and Respondents' Answer (Doc. 13); Petitioner did not file a Reply. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Kimmins for Report and Recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, deny the Petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

      Petitioner was convicted in the Pima County Superior Court on one count of kidnapping, domestic violence; one count of aggravated assault, domestic violence; and one count of attempted second-degree murder. (Doc. 14, Ex. L at 7-8.) On June 3, 2022, the court sentenced Petitioner to concurrent terms, the longest of which was ten-and-a-half years. (*Id.*, Ex. M at 9.) Petitioner appealed, and the Arizona Court of Appeals affirmed his

convictions and sentences. (*Id.*, Exs. N-Q.) Construing them in the light most favorable to upholding the convictions, the appellate court summarized the facts as follows:

> One evening in February 2019, Jones "snapped" during an argument with his girlfriend, M.R., and threatened to kill her and her family. When M.R. attempted to leave their house, Jones grabbed her hair, pulled her to the ground, kneeled on top her, and began strangling her with his hands. M.R. was able to break free, but Jones grabbed her from behind, placed her in a chokehold, and twisted her neck. Jones eventually released his hold, and M.R. ran to her next-door neighbor's house.
>
> ¶3 The neighbor called 9-1-1 and handed the phone to M.R. to speak with the dispatcher. M.R. explained that Jones had "almost choked the life" out of her. While waiting for police to arrive, M.R. texted her sister: "Police are on the way he tried to kill me I'm at the neighbor's." Responding officers observed M.R. was "visibly shaky," "looked like she had been crying," and had "some redness and markings around her neck."
>
> ¶4 M.R. was taken to the hospital in the early morning hours and, while being treated, described to the treating physician and a detective the injuries Jones had inflicted on her. Jones was arrested. Later that morning, M.R. emailed the detective that she wanted to recant her statement and asked that Jones not be charged. On February 5, M.R. left the detective a voicemail saying she wanted to change her statement and recant what she had told him. On February 7, the detective interviewed M.R., and she recanted her initial statement. M.R. thereafter maintained she had lied about what happened during the incident, she had inflicted the injuries on herself, and Jones had been trying to restrain her from hurting herself.

(*Id.*, Ex. Q at 2-3.) Petitioner filed a Petition for Review in the Arizona Supreme Court, which was denied on November 8, 2023. (*Id.*, Exs. R, S.)

On September 1, 2023, Petitioner filed a Notice of Post-Conviction Relief (PCR). (*Id.*, Ex. U.) Appointed PCR counsel filed a notice pursuant to Arizona Rule of Criminal Procedure 32.6(c) that he had found no colorable claims to raise. (*Id.*, Ex. Y.) Petitioner was granted forty-five days to file a pro se petition; when he did not do so, the PCR court dismissed his PCR Notice on March 19, 2024. (*Id.*, Exs. Z, AA.) On April 17, 2024, Petitioner filed a second PCR Notice. (*Id.*, Ex. BB.) The PCR court summarily dismissed the second notice because Petitioner had not provided a sufficient basis for filing a successive petition. (*Id.*, Ex. CC.) Petitioner filed a third PCR Notice on June 20, 2024. (*Id.*, Ex. DD.) The PCR court dismissed the notice. (*Id.*, Ex. EE.) Petitioner did not seek review in the Arizona Court of Appeals as to any of the PCR court's rulings. Petitioner initiated his habeas action in this Court on December 16, 2024. (Doc. 1.)

**DISCUSSION**

Petitioner alleges five claims, labeled as follows: (1) "911 call"; (2) "text message"; (3) "detective interview at the hospital"; (4) "detective recorded interview at trial"; and (5) his constitutional rights were violated because he did not receive credit for five days of pretrial incarceration. Respondents contend none of the claims are cognizable because Petitioner failed to identify a federal basis for each claim. Respondents also contend that Claims 3 through 5 are procedurally defaulted.

**COGNIZABILITY**

Respondents are correct that Petitioner's claims state only facts and do not identify a federal basis for any of the claims. However, as to Claims 1 through 4, Petitioner alleges that he raised the claims on direct appeal. On direct appeal, Petitioner argued that his Sixth Amendment right to confrontation was violated by the trial court's admission of the victim's out-of-court statements when she refused to testify at trial. (Doc. 13, Ex. N at 8.) The captions of Claims 1 through 4 in this Court correspond to subparts of the Confrontation Clause claim raised on direct appeal. Claim 1 is labeled, "911 call," and the admission of the victim's statements to the 911 operator was challenged on appeal.[1] (*Id.* at 18-19.) Claim 2, which is labeled "text message," corresponds to Petitioner's appellate challenge to the admission of the victim's text message to her sister. (*Id.* at 21-22.) Claim 3 is titled, "Detective interview at the hospital," and Claim 4 is titled, "Detective recorded interview at trial." On appeal, Petitioner challenged the admission of two statements the victim made to detectives at the hospital, one of which was recorded. (*Id.* at 19-20.) Because Petitioner readily could amend to state a Sixth Amendment violation as to Claims 1 through 4, the Court finds they should not be dismissed as not cognizable.

---

[1] Despite the label on Claim 1, Petitioner's factual statement in support of the claim talks primarily about the victim's text message to her sister. (Doc. 1 at 6, 14.) However, because Claim 2 is labeled as addressing the text message, the Court separates them based on the labels that Petitioner used in the Petition.

In Claim 5, Petitioner alleges "constitutional error" based on the state's failure to credit five days of his pretrial incarceration towards service of his final sentence. Petitioner did not allege a specific federal constitutional violation. However, in the event Petitioner could amend to state the basis of a federal claim, the Court will review Claim 5 for exhaustion and procedural default because Respondents asserted that as a defense to this claim.

**EXHAUSTION AND PROCEDURAL DEFAULT**

The Court reviews Claims 3 through 5 as to exhaustion and procedural default.

**Standard**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy), *overruled on other grounds by Apelt v. Ryan*, 878 F.3d 800, 827 (9th Cir. 2017). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted

but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Claims 3 and 4**

Claims 3 and 4 challenge admission of the victim's interviews at the hospital. On direct appeal, Petitioner alleged that admission of the victim's statements at the hospital to Sergeants Rizzi and Leonard violated his Sixth Amendment right to confrontation. (Doc. 13, Ex. N at 19-20.) The Arizona Court of Appeals rejected this claim:

> In his opening statement, Jones mentioned M.R.'s interview with the detective during which she had recanted her earlier statements. On the second day of trial, the parties discussed whether the trial court's ruling on the state's motion in limine permitted the state to introduce the detective's interview with M.R. Jones mistakenly believed the interview was part of the motion in limine, when it was not. Jones and the state, however, agreed that if Jones was going to play the recantation interview, then the detective's first interview would be admissible as an inconsistent statement. When the court asked Jones whether he was withdrawing his Confrontation Clause objection, he answered that he agreed with the state that "we're just doing it in a different order" and "[m]y evidence from the recantation would be impeachment evidence, . . . but then they would have the ability to bring in the other statements." For sequencing purposes, they agreed to play the recordings in chronological order. Thus, the court admitted the two recordings of the detective's first interview with M.R. as an inconsistent statement, and the recantation interview was played in full for the jury later. Because Jones withdrew his Confrontation Clause objection and agreed to the admission of the challenged evidence, the invited error doctrine applies and there is no error. *See State v. Leyvas*, 221 Ariz. 181, ¶ 25 (App. 2009).

(*Id.*, Ex. Q ¶ 18.)

The Arizona Court of Appeals relied on the invited error doctrine to conclude there was no error to review. "Federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent

of the federal question and adequate to support the judgment.'" *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Courts have concluded that when the state court relies on the invited error doctrine it operates as an independent ground barring consideration of the claim in a habeas proceeding. *See Leavitt v. Arave*, 383 F.3d 809, 832 (9th Cir. 2004); *Druery v. Thaler*, 647 F.3d 535, 545-46 (5th Cir. 2011) (citing *Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001); *Parker v. Champion*, 148 F.3d 1219, 1221-22 (10th Cir. 1998); *Wilson v. Lindler*, 8 F.3d 173, 175 (4th Cir. 1993) (en banc)). "As a state procedural rule, the invited error doctrine is an adequate and independent nonfederal ground, firmly established and consistently followed" by Arizona courts. *Campbell v. Thornell*, No. CV-23-08020-PCT-DWL (MTM), 2024 WL 1774091, at *3 (D. Ariz. Mar. 29, 2024) (analyzing a Confrontation Clause claim), report and recommendation adopted, 2024 WL 1765687 (D. Ariz. Apr. 24, 2024); *Aguilar v. Shinn*, No. CV-19-00359-TUC-JGZ-JR, 2021 WL 9374894, at *4 (D. Ariz. July 22, 2021) (collecting cases that held the invited error doctrine was a procedural bar to habeas relief), report and recommendation adopted, 2022 WL 3921116 (D. Ariz. Aug. 31, 2022); *Driscoll v. Shinn*, No. CV-17-0216-TUC-JAS-BGM, 2020 WL 5775691, at *10 (D. Ariz. July 31, 2020), report and recommendation adopted, 2020 WL 5768692 (D. Ariz. Sept. 28, 2020). Accordingly, this Court is precluded from review of Claims 3 and 4 unless Petitioner can demonstrate either cause for the default and resulting prejudice, or that failure to review these claims would result in a fundamental miscarriage of justice.

It is irrelevant that the Arizona Court of Appeals further analyzed the claim and concluded that any error was harmless (Doc. 13, Ex. Q ¶ 19). *See Bennett*, 322 F.3d at 580 ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991)); *Sullivan v. Ryan*, No. CV-17-1195-PHX-DJH-JFM, 2018 WL 7570375, at *12 (D. Ariz. May 8, 2018) (holding that Court could not grant

habeas relief because the state court applied the invited error doctrine, and the procedural bar applied even though state court also reached merits of claim), report and recommendation adopted, 2019 WL 442285 (D. Ariz. Feb. 5, 2019).

### Claim 5

Petitioner alleges that Arizona failed to credit the service of his sentence with five days of pretrial incarceration. He did not indicate whether he raised this claim in state court. This claim was not raised on direct appeal. (Doc. 13, Ex. N.) In Petitioner's three Notices of PCR, Petitioner did not mention this claim. (*Id.*, Exs. U, BB, DD.) He did not file a pro se PCR Petition when the Court granted that opportunity, and he was denied the opportunity to file a petition in his second and third PCR proceedings. He did not file a petition for review at the Arizona Court of Appeals as to any of his PCR proceedings.

"As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts (plural) in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). Because Petitioner did not allege Claim 5 to the PCR court or the state appellate court, he did not properly exhaust this claim. If Petitioner were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(b)(3) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion, Ariz. R. Crim. P. 32.2(b); 32.1(b)-(h). Therefore, Claim 5 is technically exhausted and procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Accordingly, this Court is precluded from review of Claim 5 unless Petitioner can demonstrate either cause for the default and resulting prejudice, or that failure to review this claim would result in a fundamental miscarriage of justice.

### Cause and Prejudice

Petitioner did not argue cause and prejudice to excuse the default of any claims. Because ineffective assistance of counsel (IAC) is the most common basis argued for

cause, the Court examines the possibility of IAC acting as cause to excuse the default of Claims 3, 4, or 5. Claims 3 and 4 were defaulted during trial and/or on appeal; therefore, the Court looks at IAC during those proceedings as possible cause. Claim 5 possibly could have been raised on appeal or in a PCR proceeding; therefore, the Court examines IAC during those proceedings as possible cause related to Claim 5.

Before trial or appellate IAC may be used to establish cause for a procedural default, it must have been presented in state court as an independent claim. *Murray v. Carrier*, 477 U.S. 478, 489 (1986). Petitioner has not fairly presented in state court any claims of IAC. An ineffectiveness claim regarding trial or appellate counsel is now foreclosed in state court by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4(b)(3) because it does not fall within an exception to preclusion, Ariz. R. Crim. P. 32.2(b); 32.1(b)-(h). *See State v. Bennett*, 146 P.3d 63, 67, 213 Ariz. 562, 566 (2006) ("As a general rule, when 'ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.'") (quoting *State v. Spreitz*, 39 P.3d 525, 526, 202 Ariz. 1, 2 (2002)). Because Petitioner may not exhaust such a claim now, it is technically exhausted but procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Thus, IAC at trial or on appeal cannot operate as cause unless Petitioner were to establish cause and prejudice to excuse the default of those IAC claims, and no such cause is apparent here. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause itself can be procedurally defaulted). Thus, IAC at trial or on appeal may not operate as cause to excuse the default of Claims 3, 4, or 5.

To the extent, Petitioner could argue that the failure to exhaust Claim 5 was the fault of PCR counsel, it is not viable. There is no constitutional right to PCR counsel; thus, the Sixth Amendment is not implicated when counsel is ineffective in such a proceeding. The Supreme Court has carved out an exception if PCR counsel is ineffective pursuant to the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), in failing to raise a trial IAC claim, that may constitute cause to excuse a default of the trial IAC claim. *Martinez v.*

*Ryan*, 566 U.S. 1, 17 (2012). The Supreme Court has limited IAC during PCR as cause solely for claims of ineffective assistance at trial. *See Davila v. Davis*, 582 U.S. 521, 529-30 (2017) (noting the allowance applies only when a state precludes IAC at trial claims from being raised on direct appeal, requiring them to be raised in a collateral proceeding). Thus, ineffectiveness of PCR counsel may not operate as cause to excuse the default of Claim 5 alleging the State's failure to credit pretrial incarceration to his sentence. *See id*.

Because Petitioner has not alleged, and the Court has been unable to identify, cause to excuse the defaults of Claims 3, 4, and 5, these claims remain defaulted.

### Fundamental Miscarriage of Justice

Petitioner did not argue that a fundamental miscarriage of justice would result if his claims were not addressed on the merits. And he has not alleged that he was actually innocent of the charges of which he was convicted as required to establish a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). Therefore, Petitioner cannot establish a fundamental miscarriage of justice will occur if Claims 3, 4, and 5 are not heard on the merits.

## MERITS

The Court examines Claims 1 and 2 on the merits, construing them as mirroring the factually similar direct appeal claims that alleged a violation of the Sixth Amendment right to confrontation.

### Legal Standards for Relief under the AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the

state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25."A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**Confrontation Clause Standards**

In all prosecutions, state and federal, the Sixth Amendment guarantees a defendant the right to confront witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)). Thus, the Sixth Amendment generally precludes admission of a "testimonial" statement by a non-testifying witness. *Id.* at 50, 68; *Lucero v. Holland*, 902 F.3d 979, 987 (9th Cir. 2018). In contrast, "nontestimonial hearsay" is not protected by the Confrontation Clause. *Crawford*, 541 U.S. at 68; *Ohio v. Clark*, 576 U.S. 237, 245 (2015) ("a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial."). The Supreme Court has not articulated the full parameters as to what qualifies as a testimonial statement but stated generally that testimony "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51. The Court specified that testimonial statements include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

**Claim 1**

Petitioner alleges that the admission of the victim's 911 call at trial violated his right to confrontation under the Sixth Amendment. Before trial, the State filed a motion in limine seeking admission of the 911 call, in the event the victim did not appear at trial. (Doc. 13, Ex. C.) The State argued that the victim's statements on the 911 call were not hearsay and did not violate the Confrontation Clause. (*Id.* at 3-6.) After listening to the call, the trial judge found that her statements indicated she was "under a great deal of fear and stress."

(*Id.*, Ex. E at 5.) He concluded the statements were admissible as excited utterances for purposes of hearsay. (*Id.*)

Petitioner raised a Confrontation Clause claim on direct appeal regarding the 911 call. The appellate court found the victim's statements during the 911 call were not testimonial and, therefore, not subject to the Confrontation Clause:

> ¶9 Jones concedes that many of M.R.'s statements on the 9-1-1 call were nontestimonial to the extent she was relaying her immediate safety concerns to the dispatcher. He nevertheless contends "the balance of the statement" was testimonial because it was "clearly made in anticipation or with knowledge that the police would take action against the accused party." We disagree.
>
> ¶10 During the 9-1-1 call, in response to the dispatcher's question, "what happened," M.R. explained that Jones had choked her and twisted her neck and repeatedly said she thought he was going to kill her. M.R. said she needed paramedics and told the dispatcher that she did not know where Jones had gone after she left the house. Jones appears to acknowledge that M.R.'s primary purpose in making those statements was to "enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also State v. King*, 212 Ariz. 372, ¶ 29 (App. 2006) (woman calling 9-1-1 after just being injured is not contemplating being witness but is "usually trying simply to save her own life" (quoting *People v. Moscat*, 777 N.Y.S.2d 875, 880 (N.Y. Crim. Ct. 2004)). Contrary to Jones's argument that the ongoing emergency had ended because M.R. had "already escaped to a safe place with her neighbor," M.R. did not know where Jones had gone when she left the house or whether he would pursue her, and police had not yet responded to the scene. Her statements were therefore nontestimonial and not subject to the Confrontation Clause. *See State v. Fischer*, 219 Ariz. 408, ¶ 37 (App. 2008). The trial court did not abuse its discretion by admitting the call. *See Romero*, 248 Ariz. 601, ¶ 22.

(*Id.*, Ex. Q at 4-5.)

The state courts made several relevant factual findings about the victim's statements during the 911 call. They found: the statements were made just after she arrived at her neighbor's house for the purpose of seeking police assistance, she was in a state of fear and stress at the time, and Petitioner's location and current intention toward her were unknown at that time. *See Michigan v. Bryant*, 562 U.S. 344, 360 (2011) ("The circumstances in which an encounter occurs—e.g., at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards—are clearly matters of objective fact."). The Court must presume those factual findings to be correct because Petitioner has not rebutted them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a police interrogation is conducted for the purpose of addressing an ongoing emergency, then the witness's statements are nontestimonial, but when the interrogation is intended "to establish or prove past events potentially relevant to later criminal prosecution" the statements are testimonial. *Davis v. Washington*, 547 U.S. 813, 822 (2006). In the specific context of Claim 1, the Supreme Court has found that a 911 call describing "current circumstances requiring police assistance" falls outside the definition of a testimonial statement. *Id.* at 827 (characterizing the witness's statements as frantic and "necessary to be able to resolve the present emergency."). Under *Crawford* and *Davis*, the victim's statements to the 911 operator were not testimonial because they were for the purpose of obtaining a response to a current emergency and not to establish a fact for criminal prosecution in the future. *See Bryant*, 562 U.S. at 358. At a minimum, the Arizona Court of Appeals's finding that these statements were not testimonial was not an objectively unreasonable application of *Davis* and *Crawford*. Therefore, Petitioner is not entitled to relief on Claim 1.

**Claim 2**

Petitioner alleges that the admission at trial of the victim's text message to her sister violated his right to confrontation under the Sixth Amendment. Before trial, the State filed a motion in limine seeking admission of the text message if the victim did not appear to testify at trial. (Doc. 13, Ex. C.) After arriving at her neighbor's house and before the police arrived (while the 911 call was underway), the victim texted her sister, "Police are on the way. He tried to kill me I'm at the neighbors." (*Id.* at 11.) The State argued that the text message was not hearsay because it was an excited utterance made when the victim was still under the stress of the incident. (*Id.* at 11-12.) The trial judge found that the text message was made shortly after Petitioner (allegedly) tried to choke and kill her and was admissible as an excited utterance. (*Id.*, Ex. E at 10.)

The Arizona Court of Appeals found that the text message was non-testimonial and did not implicate the Confrontation Clause:

> ¶13 Jones also challenges the trial court's admission of a photograph of the text message M.R. sent to her sister stating that police were on the way and

> "he tried to kill me." Jones argues the message "was clearly sent with full awareness of, and indeed reference to the fact that prosecution was imminent" because M.R. said the police were on the way, "indicating that she was aware that . . . Jones was going to be charged with a crime based on her statements." But Jones improperly conflates M.R.'s knowledge of an imminent police response with a purported reasonable belief that her statement would be available for use at a later trial. *See State v. Alvarez*, 213 Ariz. 467, ¶ 10 (App. 2006). The record supports the court's implicit finding that M.R.'s primary purpose in sending the message was to alert her sister to the ongoing situation, not to provide future testimony against Jones. *See State v. Damper*, 223 Ariz. 572, ¶¶ 2-3, 6, 11 & 12 (App. 2010) (text message from murder victim to friend saying she and defendant were fighting was nontestimonial because "nothing in the message or its context suggests [the victim] intended or believed it might later be used in a prosecution or at a trial"). Thus, the evidence does not implicate the Confrontation Clause, *see Fischer*, 219 Ariz. 408, ¶ 37, and the court did not abuse its discretion by admitting it, *see Romero*, 248 Ariz. 601, ¶ 22.

(*Id.*, Ex. Q at 5-6.)

The Supreme Court has stated that "a casual remark to an acquaintance does not" amount to bearing testimony in the way a formal statement to law enforcement does. *Crawford*, 541 U.S. at 51. "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Clark*, 576 U.S. at 249 (2015). The text message at issue was sent contemporaneously with the 911 call, at a time when the state courts concluded the victim was in a state of fear and stress, and the purpose of the message was to provide information to her sister about the situation. Based on the circumstances, the Arizona Court of Appeals's finding that the text message was not testimonial was not an objectively unreasonable application of Supreme Court law. Therefore, Petitioner is not entitled to relief on Claim 2.

## **CONCLUSION AND RECOMMENDATION**

Claims 1 and 2 fail on the merits. Claims 3, 4, and 5 are technically exhausted and procedurally defaulted. Petitioner has not established cause and prejudice to overcome the defaults or that a fundamental miscarriage of justice will occur if Claims 3, 4, or 5 are not addressed on the merits. Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order DISMISSING the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-24-00599-AMM**.

Dated this 3rd day of October, 2025.

*Lynnette C. Kimmins*
Honorable Lynnette C. Kimmins
United States Magistrate Judge